# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL SALCICCIA

       Plaintiff,

    vs.

JOANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

_____/

CASE NO.  1:04-cv-06547 OWW TAG

REPORT AND RECOMMENDATION
TO DENY PLAINTIFF'S APPEAL
FROM ADMINISTRATIVE DECISION

Plaintiff Paul Salciccia ("claimant") seeks judicial review of an administrative decision denying his claim for supplemental security income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381 et seq.  (Doc. 1).  Pending before the Court is claimant's appeal from the administrative decision of the Commissioner.  Claimant filed his complaint on November 12, 2004 and his opening brief on October 11, 2005.  (Docs 1 and 19).  The Commissioner filed her opposition on November 9, 2005.  (Doc. 20).  Claimant did not file a reply brief.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the Commissioner consented to proceed before a United States Magistrate Judge.  (Doc. 8).  Claimant declined to consent.  (Doc. 6).

## JURISDICTION

On January 11, 1999, claimant protectively filed[1] an application for supplemental security income.  (Administrative Record ("AR") 28, 76-89).  This application was denied on July 29, 1999 and again, after reconsideration, on December 15, 1999.  (AR 28, 30).  On September 14, 2000,

---

[1]  To qualify as an effective supplemental security income claim under Title XVI, an application for benefits must be submitted on a prescribed form.  20 C.F.R. § 416.305.  However, a written statement indicating a person's intent to claim benefits can, if certain coincident and subsequent requirements are met, establish a protective filing date.  20 C.F.R. § 416.340.

claimant protectively filed a new application for benefits. (AR 31, 90-103). This application was

denied initially (AR 43-46) and on reconsideration (AR 49-52). After hearings conducted on March

14, 2002, September 26, 2002, and February 25, 2003 (AR 692-763), Administrative Law Judge

("ALJ") James N. Baker found that claimant was not disabled in a written determination dated June

16, 2003 (AR 18-27). The Appeals Council denied claimant's request for review on September 10,

2004 (AR 8-10), leaving the ALJ's decision of June 16, 2003, as the final decision of the

Commissioner.

On November 12, 2004, 63 days after the Appeals Council denied review, claimant filed a

complaint with the district court pursuant to 42 U.S.C. § 405(g). (Doc. 1). This 63 day filing period

facially violates section 405(g), which states that judicial review is predicated on the filing of a civil

action "within sixty days after the mailing" of notice of decision. However, the "60-day requirement

is not jurisdictional, but rather constitutes a period of limitations." Bowen v. City of New York,

476 U.S. 467, 478 (1986). Moreover, the Social Security Administration has extended the filing

time by regulation to allow a filing within 60 days after the date a claimant *receives* notice of the

Appeals Council's final action. 20 C.F.R. § 404.981. Such notice is presumed to have been received

within five days after the date on the notice, 20 C.F.R. § 422.210(c), in which case a claimant has 65

days to file an appeal. Here, claimant timely filed his appeal on the 63rd day after the Appeals

Council denied review.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript and the ALJ's decision,

as well as in the briefs of both claimant and the Commissioner, and will only be summarized here.

Claimant was born on May 1, 1955, making him 48 years old at the time of ALJ Baker's

decision. (AR 27, 728). At the administrative hearing, claimant testified that he had completed

twelve years of school, with additional education at a truck driving school. (AR 728). Regarding his

work history, claimant testified that he last worked in 1998, but stopped due to pain in his back, legs

and neck. Claimant stated that he had tried to work since 1998 on nine occasions, but had held no

job longer than four months. (Id.) That job, according to claimant, was as a painter and ended

sometime in late 2002. (AR 728-730).

1    As to his medical condition, claimant testified that suffers from confusion, depression, back

2   pain and leg and finger cramps, all of which keep him from working.  (AR 733).  According to

3   claimant, he can only concentrate and maintain a conversation for 15 minutes at a time, after which

4   he "just kind of drift[s] away."  (Id.)  Claimant testified that his back pain was constant and felt like

5   it was on fire.  (AR 733-734).  Regarding his finger clamping, claimant stated that it happened a lot

6   and that he could only use his hands for 15 to 20 minutes at a time, and even so with pain.  (AR 735).

7   Claimant testified that his cirrhosis tires him to the point of having to lie down and take a nap three

8   or four times a day.  (AR 735-736).  Claimant also testified that he suffers periodic seizures.

9   (AR 736-737).  According to claimant, his last seizure occurred three months before the hearing, but

10   before that they occurred weekly.  (AR 742).  Claimant admitted that his medications had changed to

11   deal with the problem.  (AR 743).

12    As to his exertional capacity, claimant testified that can only stand for 20 to 30 minutes due

13   to problems with his back, neck, and legs.  (AR 736).  Claimant also stated that he cannot sit in a

14   chair for longer than 20 minutes without his legs becoming numb.  (Id.)  Claimant testified that he

15   could probably lift 20 to 40 pounds.  (Id.)

16    Regarding his daily life activities, claimant testified that he walks his children two blocks to

17   school and then returns home to do physical therapy.  (AR 739).  Afterwards, according to claimant,

18   he just moves around slowly.  (Id.).  Claimant also testified that he watches television and reads.

19   (Id.).  Finally, claimant admitted to a history of drug and alcohol use.  (AR 739-740).  According to

20   claimant, he had not had any alcohol in 3 1/2 years, in about December, 1999, and that he attends

21   Alcoholics Anonymous ("AA").  (AR 740).  Claimant explained a medical note referencing a smell

22   of alcohol on his person by stating that it was due to Nyquil.  (AR 740-741).  Claimant testified that

23   he had "fall[en] off the wagon" and consumed one or two beers just once or twice, but otherwise

24   faithfully attended AA meetings at least four times a week for the past four years (though he did not

25   know his anniversary date).  (AR 741, 743).  Regarding his drug use, claimant testified that he had

26   quit using drugs 19 years ago, but had overused pain medications on occasion, the last time being

27   during Christmas, 2001.  (AR 741).

28   ///

3

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from doing work performed in the past. If claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five

1   step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the

2   claimant as to steps one to four," while at the same time noting that an ALJ's *affirmative duty* to

3   assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ

4   shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics

5   in original).  The initial burden is met once a claimant establishes that a physical or mental

6   impairment prevents him from engaging in her previous occupation.  The burden then shifts to the

7   Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2)

8   that a "significant number of jobs exist in the national economy" which claimant can perform.

9   Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

10                                **STANDARD OF REVIEW**

11         Congress has provided a limited scope of judicial review of a Commissioner's decision.  See

12   42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

13   the determination is not based on legal error and is supported by substantial evidence.  See Ukolov v.

14   Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)("'[w]e may set aside a denial of benefits only if it is

15   not supported by substantial evidence or if it is based on legal error'")(quoting Thomas v. Barnhart,

16   278 F.3d 947, 954 (9th Cir. 2002)); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Delgado v.

17   Heckler, 722 F.2d 570, 572 (9th Cir. 1983) ("[t]he [Commissioner's] determination that a claimant is

18   not disabled will be upheld if the findings of fact are supported by substantial evidence")(citing 42

19   U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514

20   F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888

21   F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d

22   573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might

23   accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)

24   (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw

25   from the evidence" will also be upheld.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On

26   review, the court considers the record as a whole, not just the evidence supporting the decision of the

27   Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quoting Kornock v. Harris,

28   648 F.2d 525, 526 (9th Cir. 1980)).

5

1    It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  <u>Richardson</u>,

2  402 U.S. at 400.  If the evidence supports more than one rational interpretation, the Court must

3  uphold the decision of the ALJ.  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if

4  there is substantial evidence to support the administrative findings, or if there is conflicting evidence

5  that will support a finding of either disability or nondisability, the finding of the Commissioner is

6  conclusive.  <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision

7  supported by substantial evidence will still be set aside if the proper legal standards were not applied

8  in weighing the evidence and making the decision.  <u>Brawner v. Secretary of Health and Human</u>

9  <u>Services</u>, 839 F.2d 432, 433 (9th Cir. 1987).

10                                         **ALJ'S FINDINGS**

11   **Step One**

12   The ALJ found at step one that claimant "has not engaged in substantial gainful activity since

13  the alleged onset of disability."  (AR 26).

14   **Step Two**

15   At step two, the ALJ found that claimant had "Hepatitis C with cirrhosis of the liver, history

16  of seizure disorder, mixed depression and anxiety disorder, substance abuse, and degenerative disc

17  disease of the cervical spine," impairments which the ALJ considered "severe" based on the

18  requirements of 20 C.F.R. § 416.920(b).  (AR 20, 26).

19   **Step Three**

20   At step three, the ALJ assessed whether claimant's impairments were among those

21  acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  <u>See</u>

22  20 C.F.R. § 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  The ALJ

23  concluded that claimant's medically determinable impairments did not meet or equal a listed

24  impairment.  (AR 20, 26).

25   **Step Four**

26   At step four, the ALJ found that claimant had no transferable skills from past relevant work.

27  (AR 26).

28  ///

6

**Step Five**

At step five, the ALJ found that claimant could lift and carry up to 10 pounds, stand and/or walk for 2 hours in a workday, sit for up to 6 hours in a workday, and occasionally bend, stoop, climb or kneel, but should avoid crawling or working around hazardous machinery or at heights. (AR 26).  Given these limitations and using the Medical-Vocational Guidelines ("the Grids") as a framework for decision-making, see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.21, the ALJ found that there were a significant number of jobs in the national economy that claimant could perform: account clerk (7,000 jobs nationally and 1,200 in the region), order clerk (14,000 jobs nationally and 4,000 in the region), and small parts assembler (48,000 jobs nationally and 16,000 in the region, a figure determined by eroding the total number of jobs by fifty percent due to claimant's nonexertional limitations).  (AR 26).  The ALJ therefore concluded that claimant was not disabled under the Act.  (Id.).

### ISSUES

Claimant's Opening Brief raised the following issues for consideration:

A.  Whether the vocational expert stated sufficient grounds upon which to deny benefits to claimant.

B.  Whether the ALJ properly reviewed and developed the record pertaining to claimant's mental health.

This Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

### DISCUSSION

**A.    Vocational testimony**

**I.       Limitation on sitting**

Claimant's first argument on appeal is that the vocational expert's testimony was insufficient. (Doc. 19, p. 6).  Specifically, according to claimant, "the VE confirmed that there would be a problem if a claimant were limited to 6 hours sitting given the jobs he cited to the ALJ which Plaintiff could do."  (Id.)  The Court disagrees.

7

1    At a continued administrative hearing on February 25, 2003, the ALJ posed five different

2    hypothetical questions to vocational expert ("VE") David Ditmer, each based upon a different

3    assumed residual functional capacity.  (AR 748-752).  In terms of claimant's ability to sit, four of the

4    five hypotheticals assumed the ability to "sit *about* six" hours (consistent with sedentary work)[2],

5    while one hypothetical assumed the ability to sit for six to eight hours.  (AR 748-752).

6    Two of the hypotheticals presented to the VE were based upon Physical Residual Functional

7    Capacity Assessments by agency physicians, one dated December 3, 1999 (AR 282-289) ("Exhibit

8    9F" of the administrative record) and another dated January 15, 2001 (AR 290-297) ( "Exhibit 10F"

9    of the administrative record).  Both of these assessments - and the hypothetical questions for which

10   they formed the basis - stated that claimant could sit "*about* " 6 hours in an 8-hour workday.  (AR

11   282-297, 748, 751).  The restrictions set forth in Exhibit 9F were presented by the ALJ to the VE as

12   follows:

13       ALJ:   Okay.  9F -- this is the doctor whose handwriting I can't read.
                10 occasionally, less than 10 frequently, stand and/or walk at least two hours
14              in an eight hour day, sit *about* six.  Once again, the same occasional postural
                limitations.  Okay.  Avoid all exposure to hazards, machinery, height,
15              et cetera.

16   (AR 748) (italics added).  Given these restrictions, the VE identified various unskilled, sedentary

17   jobs available to claimant in the national and regional economies, including charge account clerk and

18   order clerk.  (AR 749-750).  The same available jobs were noted by the VE in connection with a

19   different hypothetical based upon Exhibit 10F in the administrative record, a Physical Residual

20   Functional Capacity Assessment dated January 25, 2001.  (AR 290-297, 751).  Notwithstanding their

21   other differences, both assessments (Exhibits 9F and 10F) - hence both hypotheticals - included the

22   same limitation on sitting: "*about*" six hours.  (AR 283, 291).  As noted above, a limitation on

23   sitting to *about* six hours in an 8-hour workday is consistent with the definition of "sedentary work"

24   as set forth in Social Security Administration's Program Operations Manual ("POMS").

25   ///

26

27       [2]  The Social Security Administration's Program Operations Manual ("POMS") states that sedentary work
     involves, among other things, the ability to sit for "approximately 6 hours of an 8-hour workday."  POMS § DI
28   25001.001(B)(39)(c).

See POMS § DI 25001.001(B)(39)(c)(defining "sedentary work" to include a limitation on sitting of "approximately 6 hours of an 8-hour workday").

In his written determination, the ALJ referenced Exhibits 9F and 10F.  (AR 24).  However, his description of claimant's residual functional capacity reflects that he adopted the restrictions identified in Exhibit 9F and posed to the VE the second hypothetical question:

> Physicians reviewing the medical evidence for the Social Security Administration agreed that the claimant would be able to perform a wide range of sedentary work activities, with occasional postural limitations, and a need to avoid hazardous working conditions due to the seizure activity (Exhibits 9F, 10F).
>
> Accordingly, the undersigned finds the claimant retains the following residual functional capacity: he is able to lift and carry up to 10 pounds; he is able to sit for up to 6 hours in an 8-hour day, and stand or walk for 2 hours; he is limited to occasional bending, stooping, climbing, or kneeling; and he should avoid crawling or working around hazardous machinery or at heights.  He is limited to unskilled work secondary to drug and alcohol problems and any other psychological impairments associated with these problems.

(AR 24).  While the ALJ used the phrase "sit for up to 6 hours" in the above-quoted passage, and again in his written findings (AR 26), it is clear that he had adopted the limitations set forth in Exhibit 9F, the Physical Residual Functional Capacity Assessment dated December 3, 1999, and therefore its limitation on sitting to "*about*" 6 hours.

Notwithstanding testimony by the VE as to the many jobs available to claimant in the national and regional economies given the limitations noted in Exhibit 9F, specifically the limitation on sitting for *abou*t 6 hours, claimant attempts to find error in connection with subsequent remarks made by the VE in response to questioning by his attorney.  Specifically, claimant's attorney posed to the VE a *different* hypothetical with more "regimented" sitting limitations.  Rather than limiting available jobs involving *about* 6 hours of sitting, claimant's attorney posed a question where there could be *no more than* 6 hours of sitting.  Given that additional restriction, the VE noted that there could be problem (although he did not state whether it would be a problem or, if so, whether it would be a material problem):

> Atty:   All right.  Now, with that one hypothetical -- well, I -- the last two hypotheticals, let's say --
>
> VE:   Yeah.
>
> ALJ:   That would be 27F and 10F?

1      Atty:    Correct.  No, no, 10F and 11F.

2      ALJ:    Okay.

3      Atty:    In those, if I understood it, if we regimented it to sitting no more than six hours, the hypothetical said six hours, are some of the sedentary jobs

4                requiring more than six hours of sitting?

5      VE:     If we say no more than six, then that could be a problem with some of the jobs, yes.

6

     Atty:    Okay.  Okay.  Would that be a problem in the hypothetical where you name

7                charge account clerk, food order clerk and small parts assembly?

8      ALJ:    That would be 9F.

9      Atty:    Correct.

10      VE:     Yes, that could be a problem with those jobs.

11 (AR 754).

12       As noted above, the hypothetical posed by claimant's attorney to the VE differed from that

13 adopted by the ALJ in his written determination.  Moreover, it did not track the Physical Residual

14 Functional Capacity Assessments relied upon by the ALJ and was, in its "regimentation," different to

15 a degree from the definition of "sedentary work" as set forth in the Social Security Administration's

16 Programs Operations Manual.  Finally, even a limitation of sitting to "no more than" six hours is in

17 complete accord with a full range of sedentary work.  Social Security Ruling 96-9p, 1996 WL

18 374815, *3 (July 2, 1996)("The ability to perform the full range of sedentary work . . . . [anticipates

19 that] [s]itting would generally total about 6 hours of an 8-hour workday").  Accordingly, the ALJ's

20 refusal to erode the number of sedentary jobs available to claimant in light of the above-referenced

21 VE testimony was of no moment.  See  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)

22 ("If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational

23 expert . . . has no evidentiary value"); Sample v. Schweiker, 694 F.2d 639, 644 (9th Cir. 1982)

24 (a vocational "expert's testimony is valuable only to the extent that it is supported by medical

25 evidence").

26      **ii.**       **Limitation on socialization**

27       Claimant's second VE-related argument is that the ALJ erred by failing to present claimant's

28 socialization problems to the VE.  (Doc. 19, p. 6).  Specifically, claimant contends that because

"[a]ll the doctors who saw [him] confirmed there were valid problems for . . . dealing with people," it was error to have failed to include this limitation within the hypothetical questions posed to the VE.  (Id.)

The undersigned disagrees with claimant's proposition.  First, two different Mental Residual Functional Capacity Assessments, one by Marina C. Vea, M.D. on September 26, 1999, and another by a different agency physician on May 8, 2001, concluded that claimant related adequately to others absent drug abuse.  (AR 23, 311-312, 318-319).  Moreover, medical expert Helen White, M.D. testified that claimant would be able to respond appropriately to supervision and to co-workers on a sustained basis.  (AR 720).  Furthermore, two consultative examiners, Roger S. Smith, D.O. and Gregory Fields, Ph.D., both opined that claimant was only "somewhat limited" in his ability to relate to others.  (AR 23, 371. 402).  Finally, the ALJ specifically noted that claimant's psychological symptoms were "well controlled when the claimant is not abusing alcohol or drugs."  (AR 23).  In light of the foregoing, the ALJ's decision not to include a limitation on "dealing with people" in hypothetical questions posed to the VE was proper.  See Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir. 1997)(hypothetical question posed to VE need not include claimed impairments that were properly rejected by ALJ as unfounded); cf. Gallant, 753 F.2d at 1456 ("If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert . . . has no evidentiary value"); Sample, 694 F.2d at 644 (a vocational "expert's testimony is valuable only to the extent that it is supported by medical evidence").

**B.**   **Review and development of the mental health record**

Preliminary to addressing claimant's mental-health related arguments, the Court notes that there is a statutory preclusion against benefits where drug addiction or alcoholism is a contributing factor to disability.  42 U.S.C. § 423(d)(2)(C).  As stated in the statute:

> An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

42 U.S.C. § 423(d)(2)(C).  While the briefs on appeal are silent as to this preclusion, it is because of § 423(d)(2)(C) that a disabling, *non-alcohol and non-drug related* mental health impairment must be proven if benefits are to be awarded.

1    Further complicating review on appeal is that the mental-health related portion of claimant's

2    memorandum is, in large measure, a stream of consciousness replete with one-sentence missives.

3    (See Doc. 19, pp. 6-9).[3]  Occasionally, these missives coalesce into arguments.  These arguments, in

4    turn, appear to be as follows.

5    **i.    ALJ's assessment of treating physician Motelet's opinion**

6    Claimant asserts that the ALJ erred in discounting the opinion of treating psychiatrist

7    Kathleen Motelet, M.D., who had opined on September 13, 2002, that claimant had a "poor" ability

8    to deal with the public and interact with supervisors, among other issues.  (Doc. 8, pp. 8-9, AR 683).

9    The undersigned disagrees and finds that ALJ Baker properly discounted Dr. Motelet's September

10   13, 2002 mental health assessment.

11   The courts distinguish among the opinions of three types of physicians:  treating physicians,

12   physicians who examine but do not treat the claimant ("examining physicians") and those who

13   neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821,

14   830 (9th Cir. 1996).  As a general rule, a treating physician's opinion is given special weight because

15   of his or her familiarity with a claimant's physical condition.  Id.; Fair v. Bowen, 885 F.2d 597, 604-

16   605 (9th Cir. 1989); see also Smolen v. Chater, 80 F. 3d 1273, 1285 (9th Cir. 1996) ("Because

17   treating physicians are employed to cure and thus have a greater opportunity to know and observe the

18   patient as an individual, their opinions are given greater weight than the opinions of other

19   physicians"); Social Security Ruling 96-2p, 1996 WL 374188, *1 (July 2, 1996)(the opinions of a

20   treating physician ordinarily should be given great weight).

21   Regardless of the weight given to a treating physician's medical opinion, it is not binding on

22   the ALJ with respect to the ultimate determination of disability.  See Batson v. Commissioner of

23   Social Security Administration, 359 F.3d 1190, 1194-1195 (9th Cir. 2004) (treating physician had

24   opined that claimant "met or equaled the criteria" for a listed impairment under 20 C.F.R. § 404

25   Subpt. P App. 1, § 105C); Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989)("treating

26

27   [3]  At least one court has attempted to put an end to social security appeals written in a "stream of consciousness" style of writing by requiring "distinct point headings and corresponding argument."  Helms ex rel. Daniels v. Apfel, 33 F. Supp. 2d 1113, 1114 n.2 (S.D. Iowa 1998).  Failing that, the same court has threatened to strike such briefs from the record.  Id.

28

physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability").  Accordingly, although entitled to great weight, a treating physician's opinion is not conclusive and may be rejected by the ALJ under appropriate circumstances.  Where a treating physician's opinion is not contradicted by another physician, it may be rejected by the ALJ only for "clear and convincing" reasons supported by substantial evidence in the record.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Lester, 81 F.3d at 830).  Where a treating physician's opinion is contradicted by another physician, the ALJ may reject the treating physician's opinion only by providing "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  The same test applies to examining physicians: the ALJ must give clear and convincing reasons for rejecting uncontradicted opinions, or "specific and legitimate reasons supported by substantial evidence in the record" for rejecting those opinions that have been contradicted.  Lester, 81 F.3d at 830-831.

Courts within the Ninth Circuit have recognized various reasons deemed sufficient for the ALJ to disregard a treating or examining physician's opinion.  These reasons include: conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for physicians' reports that are based substantially on the claimant's subjective complaints of pain.  Flaten v. Secretary of Health & Human Svcs., 44 F.3d at 1463-1464; Fair, 885 F.2d at 604.  The ALJ may also disregard a physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." Magallanes, 881 F.2d at 751(quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986).  In contrast, vague, broad or generalized reasons are insufficient grounds for the ALJ to reject a treating physician's opinion.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

Here, after summarizing a wealth of other mental health evidence in the record, ALJ Baker wrote the following regarding Dr. Motelet's September 13, 2002 assessment:

> In regard to the variety of medical source opinions that have been offered in connection with the claimant's applications and appeals since 1999, it is noted that Dr. Kathleen Motelet submitted a psychological assessment in conjunction with the September 2002 hearing in which she estimated that claimant would have a poor  ability for dealing with other people, dealing with stress, maintaining attention, or understanding and carrying out detailed instructions (Exhibit 32F).  However, Dr. Motelet also indicated that she had completed that form only at the request of the claimant, on short notice,

13

that she had seen the claimant only on that brief occasion, and that she had no opportunity to look at any of his treatment records (Exhibit 33F). Moreover, the assessment is not consistent with the treatment records, which establish that the claimant's psychological symptoms are well controlled when the claimant is not abusing alcohol or drugs. As a result, little weight is given to Dr. Motelet's assessment.

(AR 23).

The ALJ provided specific and legitimate reasons for discounting Dr. Motelet's opinion. The first reason given was that Dr. Motelet herself had discounted her September 13, 2002, opinion for a variety of reasons - (1) she had seen claimant only once, (2) she was "not really familiar with his case," (3) she submitted her opinion without review of claimant's prior records which she later admitted would have been helpful, and (4) upon subsequent review of claimant's prior records she found that claimant had a number of different diagnoses. (AR 687). As. Dr. Motelet wrote:

I have seen this patient one time only at his first return visit to this clinic . . . . I am not really familiar with his case. I filled out the papers he presented at that visit as being of some urgency. It might have been helpful to have had his previous records from this clinic which weren't available at that time because the case was closed apparently. Now they are available and I see that he has had a number of different diagnoses.

(AR 687).

In addition to noting Dr. Motelet's concerns with her own opinion, ALJ Baker also observed that her opinion was inconsistent with comments in claimant's treatment records to the effect that his problems were controlled when he was not abusing alcohol or drugs. (AR 23). For example, one such record dated December 28, 2000 by treating physician Harvey Liebeskind, M.D. stated that claimant's "prognosis is reasonably good at this point assuming he continues to be sober." (AR 550). Dr. Liebeskind's opinion coincides with reports by agency physicians, who noted in various Mental Residual Functional Capacity Assessments that claimant's psychological issues were not significant in the absence of drug and alcohol abuse. (AR 310-312, 318-320). It is therefore beyond peradventure that ALJ Baker set forth both specific and legitimate reasons for discounting Dr. Motelet's opinion.

### ii.   ALJ's assessment of Claimant's credibility

Although not specifically stated in his brief (as is typical with many of the arguments raised therein), claimant appears to take issue with the ALJ's decision to discount his credibility. (Doc. 19,

14

pp. 7-9).  Indeed, claimant explicitly cites and challenges remarks by the ALJ - such as those pertaining to claimant's use of drugs and alcohol - that were fundamental to the ALJ's credibility assessment.  (AR 22-23, Doc. 19, p. 7).   That being the case, the undersigned has considered ALJ Baker's credibility determination and finds no error.

A two step analysis applies at the administrative level when considering a claimant's subjective credibility.  Smolen v. Chater, 80 F.3d at 1281.  First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom.  Id. at 1281-1282.  If claimant satisfies this test - and if there is no evidence of malingering - the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so."  Id. at 1281.  Such specificity is crucial so as to enable effective judicial review.  See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

Here, upon first setting forth a synopsis of claimant's visits with various physicians (AR 17-19), ALJ Baker noted several specific, clear and convincing reasons - amply supported by substantial evidence in the record - for discounting claimant's subjective psychological complaints, and the supposed limitations that went with them.  These included the following:

a.      While claimant testified to having ceased using alcohol by the end of 1999 (AR 740), the ALJ cited medical records indicating that such use continued well into 2001.  (AR 22, 588, 594, 656, 663).

b.      While claimant reported psychological symptoms of depression and anxiety (AR 22), post-detox medical reports showed improved symptoms when claimant was sober.  (AR 22-23, 569).  Moreover, several Mental Residual Functional Capacity Assessments cited by the ALJ noted the absence of significant psychological problems in the absence of drug and alcohol abuse.  (AR 23, 312, 318).

15

c.      Claimant was examined and tested by a psychiatrist in May 1999, and by a

psychologist in December 2000, both of whom indicated that claimant "should be able to maintain

the attention and concentration necessary to understand, remember and follow at least simple and

repetitive instructions on a sustained basis."  (AR 23, 369-371, 400-403).

d.      Finally, the ALJ noted that claimant's credibility on subjective issues was reduced by

an apparent motive for secondary gain.  (AR 23).  Thus, the ALJ correctly observed that

> "[i]n September 1999, the claimant expressed concern over the recent denial of the
> disability claim he had filed earlier that year (Exhibit 29F/page 30), and he complained
> about the denial of his appeal on that claim in March 2000 (Exhibit 30F/page 64).  In
> July 2000 (shortly before his current claim), the claimant asked his doctor if the recent
> blackout episodes would qualify for disability benefits, and the doctor suggested the
> possibility of secondary gain as the motivation for subjective symptoms (Exhibit
> 29F/page 22)."

(AR 23, 474, 482, 594).

In light of the foregoing, the undersigned concludes that ALJ Baker articulated sufficient

justification for his decision to discredit claimant's subjective psychiatric complaints, and that the

ALJ's findings were well supported by substantial evidence in the record.  See Light v. Social Sec.

Admin., 119 F.3d at 792 ("the ALJ may consider [claimant's] reputation for truthfulness,

inconsistencies either in his testimony or between his testimony and his conduct, his daily activities,

his work record, and testimony from physicians and third parties concerning the nature, severity, and

effect of the symptoms of which he complains"); Brawner, 839 F.2d at 433 (upon giving "great

weight to [the] ALJ's credibility assessment," the court concluded that it was supported by

substantial evidence).

**iii.     ALJ's assessment of independent medical examiner White's opinion**

The ALJ considered and adopted the opinion of independent medical examiner

Dr. Helen White, who opined that  - in the absence of substance abuse - claimant should be able to

perform simple and repetitive tasks on a sustained basis.  (AR 23).  In this claim, claimant challenges

the weight and validity of Dr. White's opinion.  (Doc. 19, p. 7). The Court finds no legal error in the

ALJ's decision to adopt Dr. White's opinion, for the reasons discussed below.

In adopting Dr. White's opinion, ALJ Baker explained that it was consistent with "the

objective medical evidence of record":

16

The claimant was examined and tested by a psychiatrist in May 1999, and by a psychologist in December 2000.  Both examining physicians indicated that the claimant should be able to maintain the attention and concentration necessary to understand, remember and follow at least simple and repetitive instructions on a sustained basis (Exhibits 23F and 26 F).  That assessment was shared by physicians who reviewed the medical evidence for  the Social Security Administration (Exhibits 13F, 15F and 18F).  Dr. White (an impartial medical expert) testified that the claimant should be able (in the absence of substance abuse) to perform simple and repetitive tasks on a sustained basis.  That assessment is consistent with the objective medical evidence of record, and is therefore adopted." (AR 23).

The "objective medical evidence" referred to by the ALJ included a May 1999 assessment by examining psychiatrist Roger R. Smith (AR 369-372), a December 2000 assessment by examining psychologist Gregory Fields (AR 400-403), and December 1999 and May 2001 assessments by two consulting physicians (AR 310-313, 318-322, 345-358).   Both of the aforementioned examining physicians concluded that claimant's mental health condition did not preclude him from maintaining the attention and concentration necessary to understand, remember and follow simple and repetitive instructions on a sustained basis. In a written assessment dated May 18, 1999, Dr. Smith wrote:

> The claimant's primary reason he feels he is unable to work is related to his medical problems including his low back pain, neck pain, hepatitis C, but also include some features of depressions and anxiety.
>
> Relative to his present psychiatric history and examination findings, the claimant's ability to deal with the public and relate and interact with supervisors and co-workers is somewhat limited but not completely impaired.
>
> *The claimant's ability to maintain concentration and attention and ability to understand, remember and carry out one or two-step job instructions is satisfactory.*
>
> The claimant's ability to withstand the stresses and pressures associated with an 8-hour work day and day-to-day work activities does appear to be limited but not completely limited.  The limitations seem to be related to some of his symptoms of depression but also to his anxiety and feeling of agoraphobia and anxiety symptoms that he gets in situation where he's confined such as waiting in line at the grocery store. (Italics added).

(AR 371).

Dr. Smith's conclusion regarding claimant's ability to carry out simple tasks is consistent with Dr. Fields' conclusions regarding the same issue.  In a written assessment dated December 19,2000, Dr. Fields reported:

> The claimant's ability to deal with the public, supervisors and co-workers appears to be somewhat limited but not completely impaired if current behavior is representative of usual functioning.

17

*The claimant's ability to maintain attention and concentration for simple one and two-step tasks appears to be unimpaired.* His ability to perform multiple-step and higher level cognitive tasks appears to be grossly unimpaired from a cognitive point of view based upon brief mental status testing.

The claimant's ability to withstand the stress and pressure associated with interview and mental status testing was unimpaired based upon today's performance. (Italics added).

(AR 402). According to both Dr. Field and Dr. Smith, claimant's ability to maintain attention and concentration for simple tasks is unimpaired. Accordingly, their written reports support the finding that claimant should be able to maintain the attention and concentration necessary to understand, remember and follow at least simple and repetitive instructions on a sustained basis. (AR 23).

In addition to the reports issued by Drs. Field and Smith, the ALJ relied on several assessments by physicians who had reviewed the medical evidence of record. (AR 23, 310-313, 318-321, 345-358). Consistent with opinions voiced by Drs. White, Field, and Smith, these reviewing physicians also concluded that claimant had the capacity to maintain the attention and concentration necessary to understand, remember and follow at least simple tasks. (AR 312, 318).

In sum, ALJ Baker did not err in relying upon the testimony of Dr. White. Given that her opinions were consistent with the reports of consultative examiners Fields and Smith, as well as with nonexamining physicians who had reviewed the evidence of record, substantial evidence supported the ALJ's decision to adopt Dr. White' opinion. The undersigned therefore finds no legal error in the ALJ's determination to do so. See Ukolov v. Barnhart, 420 F.3d at 1004 ("'[w]e may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error'")(quoting Thomas v. Barnhart, 278 F.3d at 954)).

### iv.     ALJ's duty to develop the record

In his claim alleging that the ALJ failed to properly review the mental health evidence, claimant also contends that the ALJ failed to "develop the mental health evidence of record" regarding claimant's history of alcohol abuse and sobriety. (Doc. 19-1, p. 6, line 21). Claimant's basis for this claim is the following averment:

"In fact, the ALJ did not support with any objective evidence the addiction he riddles this over-comer with having. This issue should have been further developed by the ALJ. The ALJ has a duty to develop the mental health record fully, even where an Attorney represents a claimant." (Doc. 19, p. 7, lines 27-28, p. 8, lines 1-2).

18

1   In a social security case, the ALJ has a "special duty to fully and fairly develop the record and

2   to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d at 1288 (quoting

3   Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). In discharging this duty, the ALJ is required to

4   take appropriate steps to ensure that the record of information is sufficient to address the questions

5   raised by the medical evidence, in order to ensure a fair determination of disability. See Tidwell v.

6   Apfel, 161 F.3d 599, 602 (9th Cir. 1998, as amended Jan. 26, 1999). When necessary, this duty may

7   require the ALJ to obtain additional information from treating physicians, consult a medical expert,

8   order a consultative  examination, or call a medical expert. See 20 C.F.R. § 404.1512(e), 404.1519a,

9   416.912(e), 4176.919a; Armstrong v. Commissioner , 160 F.3d 587, 590 (9th Cir. 1998).

10   Conversely, the ALJ has no duty to develop an existing record which is neither  ambiguous nor

11   inadequate for a complete and proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453,

12   459-460 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is

13   ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

14   evidence.").

15   Here, the evidence of claimant's history of alcohol dependency is neither ambiguous nor

16   inadequate.  Contrary to the above-quoted statement in claimant's brief, the ALJ *did* support with

17   "objective evidence the addiction he riddles this over-comer with having." (Doc. 19, pp. 7-8).

18   Moreover, the ALJ specifically noted in his written determination that claimant's treatment for

19   depression and anxiety was often in conjunction with heavy alcohol abuse. (AR 20)  The treatment

20   records cited by the ALJ in support of this statement show that claimant's psychological status

21   deteriorated, then improved, then deteriorated again as his alcohol abuse worsened, improved, and

22   then worsened again: (1) on March 5, 1999, claimant was seen by Michelle Clark, M.D., who noted

23   that claimant agreed to try to detox from alcohol and who "reiterated the uselessness of treatment in

24   the context of continuing substance abuse" (AR 384); (2) on March 29, 1999, claimant visited with

25   Alexander Blum, M.D., who noted that claimant subjectively presented as nervous and tense but that,

26   objectively, he had an "[o]dor of ETOH on breath" with "[n]o definite Sx of depression"  (AR 381);

27   (3) on October 21, 1999, claimant reported his alcohol use to be under control and his physician,

28   Dr. Clark, assessed that claimant was doing fairly well even though he had discontinued use of

antidepressants several weeks earlier (AR 612); (4) on December 29, 1999, claimant reported that he had again begun drinking approximately one-half case of beer per day and suffered from depression (AR 603-604); (5) on March 8, 2000, claimant smelled of alcohol and reported that he was drinking approximately one six pack of beer a day and presented as quasi-depressed (AR 594); (6) on April 2, 2000, claimant was admitted to Stanislaus County Mental Health for alcohol detox (AR 588); (7) on August 31, 2000, claimant reported to Harvey Liebeskind, M.D., that he was working to remain sober and that his incidence of panic attacks had declined (AR 557); (8) on September 26, 2000, claimant again reported to Dr. Liebeskind that he remained sober and had fewer panic attacks (AR 556); (9) on October 24, 2000, Dr. Liebeskind noted that claimant "looks as though he is clearly improving and feels that way" (AR 552); (10) on December 26, 2000, Dr. Liebeskind reported that claimant was on no medication, was continuing with his AA program, was without symptoms other than mild insomnia and that claimant's prognosis "is reasonably good at this point assuming he continues to be sober" (AR 550); (11) on May 7, 2001, claimant appeared for a medical appointment with insomnia and admitted that he had been drinking for the past two days (AR 663); (12) on August 13, 2001, claimant once again appeared for a medical appointment smelling of alcohol and reporting that he had taken valium (AR 656); (13) on March 28, 2002, claimant again reported depression but admitted to an "accidental" overdose of morphine several months earlier, whereupon he was diagnosed with a depressive disorder in conjunction with an opioid induced mood disorder and opioid dependence (AR 534).

In sum, the record was well-developed and amply supported the ALJ's determination that claimant had an ongoing substance abuse problem and, furthermore, that such problem directly impacted upon claimant's psychological status.  (AR 22.)

## CONCLUSION AND RECOMMENDATION

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded claimant is not disabled.  This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court RECOMMENDS:

///

1        1.      That claimant's social security complaint be DENIED; and

2        2.      That Judgment be ENTERED for defendant Jo Anne B. Barnhart and against claimant

Paul Salciccia.

This Report and Recommendation is submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than thirty (30) days after service of this Report and Recommendation, any party may file written objections to this Report and Recommendation with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation."  Responses to objections shall be filed and served no later than fifteen (15) days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be served on the Magistrate Judge.  The District Judge will review the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 5, 2006**
**j6eb3d**

               **/s/ Theresa A. Goldner**
               UNITED STATES MAGISTRATE JUDGE